IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AUTOMATED BUSINESS COMPANIES | § § | CIVIL ACTION NO. 06-CV-01032 |
| v. | § § § | JUDGE LAKE |
| WEBEX COMMUNICATIONS, INC. | § § | JURY DEMANDED |

**PLAINTIFF ABC'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION REGARDING *MARKMAN* RULING**

TABLE OF AUTHORITIES ...................................................................................................... ii

1.   ABC's request for clarification and/or reconsideration of "remote system controller." ..........................................................................................................1

2.   ABC's request for clarification and/or reconsideration of "logon command." ...............................................................................................................5

    2.1   The proper construction of "a remote computer unit" is "one or more remote computer units." .............................................................6

    2.2   "Remote computer unit" in the '943 Patent. ..................................................7

    2.3   "Remote computer unit" in the '945 Patent. ................................................10

    2.4   "Remote computer unit" in the '253 Patent. ................................................12

3.   ABC's request for clarification and/or reconsideration of "associates the valid logon command with the remote computer unit." ......................................................................................................................14

4.   Conclusion. ...............................................................................................................14

CERTIFICATE OF CONFERENCE ......................................................................................15

CERTIFICATE OF SERVICE ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcatel Internetworking, Inc. v. Cisco Systems, Inc.*,
  2002 WL 34454788 ..................................................................................................3

*Animatics Corp. v. Quicksilver Controls, Inc.*,
  2004 WL 1375690 ....................................................................................................4

*Automed Tech., Inc. v. Microfil, LLC*,
  2007 WL 2045697 (Fed. Cir. July 16, 2007) (cited for illustrative purposes, attached
  as *Ex. 5*)..............................................................................................................3, 4

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008).........................................................................1, 6, 8

*Broadcast Music, Inc. v. Claire's Boutiques, Inc.*,
  949 F.2d 1482 (Fed. Cir. 1991)..................................................................................3

*Creative Internet Adver. Corp. v. Yahoo! Inc.*,
  2009 WL 2382136 (E.D. Tex. July 30, 2009) ...........................................................7

*Dane Indus., Inc. v. Ameritek Indus., Inc.*,
  2004 WL 5683721 (D. Minn. May 4, 2004).............................................................4

*Display Link Corp. v. Magic Control Tech. Corp.*,
  615 F. Supp. 2d 1051 (N.D. Cal. 2009) ....................................................................4

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
  423 F.3d 1343 (Fed. Cir. 2005)..............................................................................6, 8

*Goss Int'l Americas, Inc. v. K&M Newspaper Services, Inc.*,
  469 F. Supp. 2d 547 (N.D. Ill. 2006) ........................................................................4

*Ingenio, Filiale de Loto-Quebec, Inc. v. Gamelogic, Inc.*,
  445 F. Supp. 2d 443 (D. Del. 2006)...........................................................................7

*KCJ Corp. v. Kinetic Concepts, Inc.*,
  223 F.3d 1351 (Fed. Cir. 2000)..................................................................................6

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995).................................................................................1, 13

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
  347 F.3d 1367 (Fed. Cir. 2003)................................................................................13

*Metso Paper, Inc. v. Enerquin Air Inc.*,
  2008 WL 5068712 (E.D. Wis. July 23, 2008) ......................................................... 7

*Moaec, Inc. v. Pandora Media, Inc.*,
  2008 WL 4500704 (W.D. Wis. Sept. 30, 2008) ...................................................... 7

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
  133 F.3d 1473 (Fed. Cir. 1998) .............................................................................. 9

*NEC Corp. v. Hyundai Elec. Ind. Co.*,
  30 F. Supp. 2d 546 (E.D. Va. 1998) ..................................................................... 11

*Nystrom v. TREX Co.*,
  424 F.3d 1136 (Fed. Cir. 2005) ............................................................................ 14

*Oatey Co. v. IPS Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008) ............................................................................ 13

*Paragon Solutions, LLC v. Timex Corp.*,
  566 F.3d 1075 (Fed. Cir. 2009) ............................................................................ 13

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003) ............................................................................ 13

*Taltech Ltd. v. Esquel Enters. Ltd.*,
  410 F. Supp. 2d 977 (W.D. Wash. 2006) ............................................................... 7

*Witness Systems, Inc. v. Nice Systems, Inc.*
  2008 WL 2047633 (N.D. Ga. May 10, 2008) ........................................................ 5

## Other Authorities

*Ex. 1*, Microsoft Press Computer Dictionary ..................................................................... 2

*Ex. 2*, Webster's New World Dictionary of Computer Terms .......................................... 2

*Ex. 3*, Random House Webster's College Dictionary ....................................................... 2

## PLAINTIFF ABC'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION REGARDING *MARKMAN* RULING

The Court has issued a comprehensive *Markman* opinion. In order to clarify and further evaluate a couple of the critical issues in the *Markman* ruling, Plaintiff Automated Business Companies ("ABC") files this motion for clarification, or in the alternative, for reconsideration.

1.  **ABC's request for clarification and/or reconsideration of "remote system controller."**

The '943 Patent, claim 1, and the '253 Patent, claim 16, both refer to "a remote system controller." The Court has adopted a definition of "remote system controller" as "A computer or controller...." Order, at 83. It is uncertain from the *Markman* opinion whether the Court intends to limit "a remote system controller" as "a computer or controller" to any particular hardware or software configuration, such as a single CPU, server, software or hardware device, or whether the remote system controller is not limited to any particular configuration so long as the hardware or software work together to perform the functions identified for the remote system controller.

ABC submits that, just as the Court has held with respect to a "website" (that it can consist of one or more servers), a remote system controller should not be limited to any particular configuration because the claim language does not make such a limitation, and controllers can be made up of one or more CPUs, servers, software and/or hardware devices. As discussed more fully in the next section, the phrase "a remote system controller" in the "comprising" claims of the '943 and '253 Patents should be defined to include the concept of "one or more." *See, e.g., Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008); *infra,* at 6-7.

Moreover, the '943 and '253 Patent specifications do not limit the term "remote system controller" to a single device. *See* '253 Patent, col. 5, lns. 9-14 ("The remote system controller can be *any type of computer or controller* which is capable of....") (emphasis added); col. 4, lns. 35-38 ("The telephone network controller can be *any type of bidirectional communication system*....") (emphasis added); '943 Patent, col. 5, lns. 13-18 ("The remote system controller can be *any type of computer or controller* which is capable of...."); col. 4, lns.40-43 ("The telephone network controller can be *any type of bidirectional communication system*....").

Further, the extrinsic evidence supports a finding that a "remote system controller," which was defined by the inventor as "any type of computer or controller," is not necessarily limited to a single device. A "computer," for example, is defined in technical and non-technical dictionaries by its functionality, not necessarily its physical housing or location. *See Ex. 1*, Microsoft Press Computer Dictionary, computer, 75 (1991) ("Any machine that does three things: accepts structured input, processes it according to prescribed rules, and produces results as output. Computers exist in a remarkable range of sizes, abilities, and applications."); *Ex. 2*, Webster's New World Dictionary of Computer Terms, computer, 108 (1994) ("A device capable of solving problems or manipulating data by accepting data, performing prescribed operations (mathematical or logical) on the data, and supplying the results of these operations."); *Ex. 3*, Random House Webster's College Dictionary, computer, 271 (1998) ("a programmable electronic device designed for performing prescribed operations on data at a high speed, esp. one housed with or linked to other devices for inputting, storing, retrieving and displaying data.").

As he testified with respect to "website" and the number of servers, Srinath Anantharaman, WebEx's former employee and a named inventor on WebEx's very similar patent application, also has emphasized that it is not the particular configuration, but instead the

functionality that is important. In discussing the WebEx patent application "central computer system," which Mr. Anantharaman admitted was a "controller," he testified: "It's kind of a strange thing that we talk about multiple computers. When I think of a server, it's not really a hardware box, it's really a process that's running a server demon that's running. So it could be one computer having seven different server demons or, you know, thousands of computers running lots of server demons." *Ex. 4*, Anantharaman Depo., at 112, 117.

In addition, WebEx's parent Cisco has requested and received a claim construction of "a communications controller comprising" as "an apparatus containing at least the elements of claim 14." *See Alcatel Internetworking, Inc. v. Cisco Systems, Inc.*, 2002 WL 34454788, **21-22 (C.D. Cal. Aug. 29, 2002). An "apparatus" is "'the totality of means ... [or] a group of machines used together *** to accomplish a task.'" *Broadcast Music, Inc. v. Claire's Boutiques, Inc.*, 949 F.2d 1482, 1493 (Fed. Cir. 1991) (quoting the American Heritage Dictionary, 120 (2d ed. 1982)); *Ex. 3*, apparatus, at 64 ("a group or combination of instruments, machinery, tools, or materials having a particular function."). WebEx should not be allowed to limit "a remote system controller" to a single device or particular combination of elements.

Finally, Federal Circuit and lower court cases construing "controller" have expressly refused to limit it to a single device. *See e.g., Automed Tech., Inc. v. Microfil, LLC*, 2007 WL 2045697 (Fed. Cir. July 16, 2007) (cited for illustrative purposes, attached as *Ex. 5*). The defendant argued that a "controller" was limited to a single device. The district court initially disagreed, but then subsequently held that "controller" was limited to a single device. *Id.* at *1. The Federal Circuit rejected the defendant's assertion that a "controller" was limited to a single device, relying on a 1981 computer dictionary definition of "controller" that "does not limit the

term 'controller' to a device as distinguished from a group, collection or system of devices." *Id.* The Federal Circuit held:

> We agree with the district court's initial construction, with the clarification that the "controller" need not be limited to a single *device*, as applied by the district court and asserted by Microfil. We see no basis in the intrinsic record to warrant reading the term "controller" to be limited to a single device or to any particular hardware or software. ... Without a clear indication from the patentee that a single device must control these varied functions, it is improper to limit the term "controller" to a single device rather than a single system. Accordingly, we affirm the district court's initial construction of "controller" to mean a "single control system that regulates the entire process," we clarify that the controller need not be limited to a single *device*, nor to any particular hardware or software.

*Id.* at **1-2. Likewise, there is no indication in this case that a single device must perform the functions of a remote system controller. Consistent with Federal Circuit precedent, "remote system controller" should not be limited to any particular configuration of hardware or software. *See also Animatics Corp. v. Quicksilver Controls, Inc.*, 2004 WL 1375690, **6-7 (Fed. Cir. June 8, 2004) (also cited for illustrative purposes, attached as *Ex. 6*) (holding that the district court erred in limiting a "PID controller" to exclude software implementations; recognizing that a controller can be implemented in a number of different configurations of hardware and software); *see also Dane Indus., Inc. v. Ameritek Indus., Inc.*, 2004 WL 5683721, *3 (D. Minn. May 4, 2004) (court holds "a controller on the vehicle..." is "at least one mechanism or device...."); *Goss Int'l Americas, Inc. v. K&M Newspaper Services, Inc.*, 469 F. Supp. 2d 547, 558 (N.D. Ill. 2006) (citing technical dictionary that "controller" is a "device or group of devices....," and holding that "main controller" is a functional term, not a structural term); *Display Link Corp. v. Magic Control Tech. Corp.*, 615 F. Supp. 2d 1051, 1062-1063 (N.D. Cal. 2009) ("A 'VGA controller' is a component or components that control the routing of VGA signals pursuant to the VGA standard."). Moreover, a district court has clarified that a construction of "communication traffic controller" as a "device" did <u>not</u> limit the controller to a

single hardware device, but could be a combination of hardware and software. *Witness Systems, Inc. v. Nice Systems, Inc.* 2008 WL 2047633, *5 (N.D. Ga. May 10, 2008) ("the Abstract [like the '253 and '943 Patent claims and specifications] describes the device doing something: identifying, analyzing, controlling. This suggests the device is at least a combination of hardware and software where the software does the identifying, analyzing and controlling.").

ABC therefore seeks clarification or reconsideration that "remote system controller" as "A computer or controller…." is not limited to a single device or any particular hardware or software configuration so long as the hardware or software work together to perform the functions identified for the remote system controller.

2. **ABC's request for clarification and/or reconsideration of "logon command."**

The Court also construed the term "logon command" to mean, in part, "identifying information, such as a name or data, associated with and enabling operation of a remote computer unit . . . ." Order at 54. ABC does not object to the phrasing of Court's actual construction of the term logon command, but seeks clarification and/or reconsideration of the Court's discussion of "one or more remote computer units" in which it stated that the construction "will reflect association with a single remote computer unit." *Id.* at 46.

The Court may have understood that a user would connect only to a particular remote computer unit at a time, *e.g.* the user's home or work computer, and not multiple computers simultaneously. ABC respectfully submits that clarification of that intent would be appropriate. However, to the extent that the Court intended to limit "logon command" to require that a separate and unique logon command be entered by the user to operate each of the user's separate remote computer units, or that the user only be able to have one remote computer unit, ABC respectfully seeks reconsideration.

The Freeny Patents use the phrase "remote computer unit" in different contexts, but none of them require a separate logon command for each remote computer unit or limit the invention such that the user can only have a single remote computer unit to operate remotely.

### 2.1 The proper construction of "a remote computer unit" is "one or more remote computer units."

The '943 and '945 Patent claims recite a "method for providing a service" for connecting to "a remote computer unit" "comprising the steps of....," and then later refer to "the remote computer unit." '943 Patent, claims 1 and 2; '945 Patent, claims 3-5. There is no language in the '943 or '945 Patents implying that a separate or unique logon command must be entered to enable operation of the user's different remote computer units, e.g. home or work. As the Court noted, the logon command does not establish connection -- that function is performed by the remote system controller or website. Order, at 51. There also is no language in the '943 and '945 claims, such as "single," "only" or "one," that indicate a clear intent to limit the claims to a single remote computer unit.

As a general rule of claim construction, the "indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008). Application of this rule of construction is mandatory unless a patentee evinces a clear intent to limit "a" or "an" to "one." *Id.* A patentee's subsequent use of "the" or "said" to refer back to the same claim term merely reinvokes the non-singular meaning. *Id.* Departure from this general rule requires clear justification in the claim language, specification, or prosecution history. *Id.* (holding that district court erred by construing "a pre-soaked fabric roll" as singular); *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1350-51 (Fed. Cir. 2005) (rejecting district court's construction of "a linking cable" as singular); *KCJ Corp. v.*

*Kinetic Concepts, Inc.*, 223 F.3d 1351, 1357 (Fed. Cir. 2000) (holding that there was no clear indication that the patentee departed from the general rule); *Taltech Ltd. v. Esquel Enters. Ltd.*, 410 F. Supp. 2d 977, (W.D. Wash. 2006) (following the general rule and construing "a" to mean "one or more" because nothing in the intrinsic evidence demonstrated a clear intent of singular usage); *Ingenio, Filiale de Loto-Quebec, Inc. v. Gamelogic, Inc.*, 445 F. Supp. 2d 443, 453-54 (D. Del. 2006) (rejecting party's argument that "a" is singular because based solely on subsequent use of "the" or "said" to refer to the same claim term); *Metso Paper, Inc. v. Enerquin Air Inc.*, 2008 WL 5068712, at *32 (E.D. Wis. July 23, 2008) (finding no clear intent "evidenced from the claims themselves, the specification, or the prosecution history to deviate from the general rule"); *Moaec, Inc. v. Pandora Media, Inc.*, 2008 WL 4500704, at *2-3 (W.D. Wis. Sept. 30, 2008) (construing "a storage device" to mean "one or more storage devices" despite embodiments that involved a single device); *see also Creative Internet Adver. Corp. v. Yahoo! Inc.*, 2009 WL 2382136, at *7 (E.D. Tex. July 30, 2009) (stating that "a" and "an" have "common patent law meaning" of "one or more").

When examining the '943 and '945 Patents in accordance with these construction rules, the claim language and specifications do not support limiting "remote computer unit" to a singular construction. ABC submits that the articles "a" and "the" must be given the meaning "one or more," and a logon command therefore is not limited to only being associated with or enabling connection to a single remote computer unit.

    2.2    <u>"Remote computer unit" in the '943 Patent.</u>

Claims 1 and 2 of the '943 Patent begin with the same preamble:

> A method for providing a service for connecting a local computer unit to a remote computer unit to permit the local computer unit to operate the remote computer unit, the remote computer unit comprising a personal computer, the method comprising the steps of:

Because the preambles make clear that these are "comprising" claims, the Court should follow the general rule that the initial term "a remote computer unit," when implemented as "a personal computer," means "one or more" unless there is evidence of a clear intent to use "a" in a singular sense.

Nothing in either claim of the '943 Patent demonstrates such an intent. The claims' subsequent use of "the" to refer back to the term "a remote computer unit" is not evidence of singleness. *Siebert*, 512 F.3d at 1342 ("The subsequent use of ... "the" ... simply reinvokes th[e] non-singular meaning"); *Cybex Int'l*, 423 F.3d at 1350-51 ("the word "the" is afforded the same presumptive meaning of "one or more" when used with the transitional phrase "comprising").

When claim 2 states that "a valid logon command identif[ies] the remote computer unit," the claim should be read under the construction rule as "a valid logon command identifies one or more remote computer units" because "[t]he remote computer unit" merely refers back to the original "a remote computer unit," meaning "one or more" remote computer units.

Moreover, the '943 Patent specification refutes any argument that a separate logon command is needed for each remote computer unit or that the term was intended to be singular:

> The remote system controller 26 receives the remote logon command, and in response thereto, the remote system controller 26 checks the remote logon command for validity and allows connection **to at least one of the remote computer units** 24 if the logon command is valid . . . .

'943 Patent col. 7, lns. 50-55 (emphasis added); col. 3, lns. 21-25 ("In another embodiment of the present invention, the remote computer unit of the remote portion of the split personal computer system can be provided as a plurality of networked computers....")[1] According to the specification, then, a remote system controller may allow connection to at least one, but

---

[1] In the '943 Patent, there are only claims 1 and 2. Any attempt to read the claims more narrowly than the specification would be contradictory, and make the specification superfluous.

potentially multiple remote computer units on the basis of a single logon command. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998) ("The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history."). The '943 Patent specification's description of the invention also provides that a user can have multiple remote computer units. '943 Patent, Fig. 1; col. 4 ln. 64 – col. 5 ln. 8 ("The remote computer units 24 can be located at an individual's office, home, or any other suitable location."). Further, the specification describes one individual storing application programs and data on multiple remote computer units:

> Application programs are typically stored on the remote computer units 24 and the data associated with previous usage **by the individual** are stored on the remote computer **units** 24 so that such application programs and data are accessible by the local portion 12a and 12b of the split personal computer system 10, as will be discussed below.

'943 Patent, col. 4 ln. 64 – col. 5 ln. 8 (emphasis added). Finally, the specification's description of the billing function clearly indicates that one user may use multiple remote computer units:

> The remote system controller 26 can also include a billing program which counts the time periods in which an individual utilizes **at least one of the remote computer units** 24 so that either session billing (in the case of hotel room billings, for example) or monthly billings could be made.

'943 Patent, col. 5 lns. 22-26 (emphasis added). By comparison, nothing in the specification shows an intent to limit the individual to only one remote computer unit or that a separate logon command is needed for access to each remote computer unit. It follows that for the '943 Patent, "a remote computer unit" must be interpreted to mean "one or more (or at least one) remote

computer units," and a separate or unique logon command is not associated with a particular remote computer unit.[2]

### 2.3 "Remote computer unit" in the '945 Patent.

The '945 Patent also has "comprising" claims, as shown by their identical preambles:

> A method for providing a service for remotely controlling a remote computer unit using an interface unit, the remote computer unit comprising a personal computer, the method comprising the steps of:

'945 Patent claims 3-5. As such, the general rule again applies, and "a remote computer unit" – with subsequent references to "the remote computer unit" should be interpreted to mean "one or more remote computer units." In particular, there is no clear intent that an individual must enter a separate logon command for each remote computer unit or that they can have only one remote computer unit. Again, the claim language does not contain any language that would clearly indicate an intent to limit the claims to a single remote computer unit.

Likewise, the '945 Patent specification does not contain clear evidence that "remote computer unit" means "one remote computer unit."[3] As with the '943 Patent, the '945 Patent specification supports the opposite conclusion:

> Once the customer CIU 10 is connected to the CSCU 20, the customer information is either a new customer service information, or is simply an old customer already assigned **a personal identification number (PIN)** asking to be connected to their personal computer located with the service center multiple computers systems (MCS) 30, via line 35, or **to one of the**

---

[2] Even if it were necessary to consult extrinsic evidence, the definition of "logon" referenced by the Court does not limit a particular logon to a specific computer. While a logon concededly identifies a user to a computer, it does not restrict a user to a particular computer. For example, at least as far back as 1996 when Microsoft introduced Windows NT Server 4.0, computer users had the ability to use one username and password—one logon command—to identify themselves to any computer on a particular network. The same logon command could be used to identify the same individual to potentially hundreds or thousands of computers. *Ex. 7, Levenson, Looking into Windows NT*, 21 (1997).

[3] Again, the '945 Patent has one independent claim—any attempt to read the claim language more narrowly than the specification would be contradictory and make the specification superfluous.

> customer's computers located at another location via line 39
> (see FIG. 2).

'945 Patent col. 4 lns. 37-44 (emphasis added). This preferred embodiment gives the customer a choice between multiple remote computer units, including a customer's own computers located elsewhere. The specification acknowledges that it is likely the customer will want these options for "many years," "since many customers will still want their own "personal" system at home and/or office in addition to a service provider PC." '945 Patent col. 5 lns. 24-34. The specification does not suggest that a customer needs separate logon commands for (1) his home computer, (2) his office computer, and (3) a service provider PC. Rather, it anticipates a screen allowing a customer a choice:

> The customer for example could **log onto** an internet service provider and could click the mouse arrow on the computer service icon (not shown in FIG. 2) for example and the computer service icon screen would appear and **give the customer several options to select from**. As a minimum, the options available to the customer are a) new customer, b) service computer and c) **other computers**.

'945 Patent, col. 6 lns. 5-11 (emphasis added). In addition, because the purpose of the invention is to "make the PC much more convenient and easier for the individual to use," '945 Patent Abstract, the claims should not be construed to require one user to have a different logon command to enable operation of the remote computer units. *See NEC Corp. v. Hyundai Elec. Ind. Co.*, 30 F. Supp. 2d 546, 553 (E.D. Va. 1998) ("Nor is there any doubt that the patent's purpose is a proper interpretive guide"). Given this, and the lack of evidence that a "remote computer unit" was intended to mean "one," a logon command in the '945 Patent should not be construed to be associated with one particular remote computer unit.

2.4   "Remote computer unit" in the '253 Patent.

Claim 16 of the '253 Patent also is a comprising claim. It first references "a plurality of remote computer units," clearly indicating that there are more than one remote computer units. Then, the claim repeatedly references "each of the remote computer units." The Court cited the phrase "each of the remote computer units being associated with a unique individual." Nothing in this claim language, though, suggests that a unique individual cannot be associated with multiple remote computer units. This language, in context, merely indicates that only one unique individual may use a particular remote computer unit at a time. Likewise, the fact that "each individual is associated with one of the local portions and one of the remote computer units" concerns the necessary elements for remote control operations, i.e. the individual uses a local computer to logon onto the remote system controller, which in turn enables the operation of the particular remote computer that the individual desires to remotely control. This language does not preclude an individual from having one or more remote computer units that can be remotely controlled. A user must be associated at a particular time with at least one local portion and with at least one remote computer unit in order to operate a split personal computer system, but is not otherwise restricted at other times from being associated with a different local computer unit or a different remote computer unit. There is no clear intent to limit claim 16 to a single logon command being associated with a single remote computer unit; in fact, the claim recognizes that there can be "a plurality of remote computer units."

The '253 Patent specification supports ABC's construction. First, because the '253 and '943 specifications are virtually identical, the same quotes cited above for the '943 are also contained in and indicate the same result with respect to the '253 Patent. *See* '253 Patent col. 3, lns. 18-21; col. 4 ln. 64 – col. 5 ln. 3; col. 5 lns. 18-22; col. 7 lns. 45-53. Second, the specification describes a preferred embodiment in which "the remote portion 22 of the split

personal computer system 10 desirably has less remote computer units 24 than the number of local portions 12 of the split personal computer system 10 which have access thereto." '253 Patent col. 9, lns. 21-25. If each remote computer unit were for all time associated with only one unique individual and if each local portion were always associated with only one remote computer unit, then the split personal computer system would necessarily have at least one remote computer unit for every local portion. A construction that requires this result conflicts with Federal Circuit precedent, which "normally do[es] not interpret claim terms in a way that excludes embodiments disclosed in the specification." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276-77 (Fed. Cir. 2008); *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) ("[C]laims must be construed so as to be consistent with the specification, of which they are a part.").

Because claim construction must take into account the specification, the construction of "logon command" for the '253 Patent should not require that a logon command be associated with a particular remote computer unit, or require a separate logon, in conflict with the specification. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) ("Claims must be read in view of the specification, of which they are a part."); *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1084 (Fed. Cir. 2009) ("The claims, of course, do not stand alone. Rather, they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification, of which they are a part." (citation omitted)).

Even were the Court to conclude that the language of claim 16 imposes unique limitations on a logon command, those limitations should not be imported into the '943 or '945 Patents claims, which do not contain such language. *See RF Del., Inc. v. Pac. Keystone Techs.,*

*Inc.*, 326 F.3d 1255, 1263 (Fed. Cir. 2003) ("[W]hen a claim term is expressed in general descriptive words, it typically will not be limited to a numerical range that may appear in the written description as referring to a preferred embodiment or in other, narrower claims."); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("When different words or phrases are used in separate claims, a different meaning is presumed.").

Because neither the claim language nor the specifications support a limitation on the construction of logon command that requires a logon command to be associated with only one particular remote computer unit, or that a separate logon command be entered for each remote computer unit, ABC respectfully requests that the Court reconsider its claim construction for "logon command" for each of the Freeny Patents, issuing separate constructions if necessary to take account of the different claim language.

3. **ABC's request for clarification and/or reconsideration of "associates the valid logon command with the remote computer unit."**

ABC also respectfully requests that the Court reconsider its construction of the '945 Patent term "associates the valid logon command with the remote computer unit." For the reasons explained above with respect to "logon command," the term "remote computer unit" in the '945 patent should be construed to mean "one or more remote computer units."

4. **Conclusion.**

For these reasons, ABC respectfully requests that the Court clarify and/or reconsider its claim construction rulings on the above claim terms.

Respectfully submitted,

*[signature]*

Lee L. Kaplan
State Bar No. 11094400
Federal ID No. 1840
Attorney-in-Charge
Jeffrey A. Potts
State Bar No. 00784781
Federal ID No. 16804
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-2323
Facsimile: (713) 221-2320

Of Counsel:

Marc Brockhaus
DUNLAP CODDING, P.C.
1601 NW Expressway, Suite 1000
Oklahoma City, Oklahoma 73118
Telephone: (405) 607-8600
Facsimile: (405) 607-8686

*Attorneys for Plaintiff*
*Automated Business Companies*

## CERTIFICATE OF CONFERENCE

Although a motion for clarification and/or reconsideration does not require a certificate of conference, WebEx is opposed based upon its prior positions in claim construction and in its non-infringement charts.

*[signature]*
Jeff Potts

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing instrument has been served on all counsel of record on this 7th day of October, 2009, via hand delivery and/or certified mail, return receipt requested, and/or facsimile.

*[signature]*
Jeff Potts