IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


AUTOMATED BUSINESS COMPANIES,  §
                               §
              Plaintiff,       §
                               §
v.                             §    CIVIL ACTION NO. H-06-1032
                               §
ENC TECHNOLOGY CORP., et al.,  §
                               §
              Defendants.      §


<u>**MEMORANDUM OPINION AND ORDER**</u>


This is a patent infringement suit involving certain claims of United States Patent Nos. 6,360,253 ("'253 patent"), 6,999,945 ("'945 patent"), and 7,016,943 ("'943 patent").  On September 30, 2009, the court entered a Memorandum Opinion on Claim Construction (Docket Entry No. 190) construing a number of disputed claim terms.[1]  On October 7, 2009, plaintiff Automated Business Companies ("ABC") filed the pending Motion for Clarification or, in the Alternative, Motion for Reconsideration Regarding <u>Markman</u> Ruling ("ABC's Motion") (Docket Entry No. 191).  ABC moves the court to clarify or reconsider its claim construction rulings as to three of the disputed claim terms.  Defendant WebEx Communications, Inc.

---

[1] The court's September 30, 2009, Memorandum Opinion on Claim Construction (Docket Entry No. 190) included a detailed discussion of the patented technology, the prosecution history of the asserted patents, and the procedural history of this action. The court need not restate this information in this opinion.

("WebEx") has filed a Response in Opposition to Plaintiff ABC's Motion for Clarification or, in the Alternative for Reconsideration Regarding <u>Markman</u> Ruling ("WebEx's Response") (Docket Entry No. 196).   For the reasons explained below, ABC's Motion for Clarification or, in the Alternative, Motion for Reconsideration Regarding <u>Markman</u> Ruling will be granted in part and denied in part.

## I.   <u>Standard of Review</u>

The Federal Rules of Civil Procedure do not specifically provide for motions for clarification or reconsideration.  <u>Shepherd v. Int'l Paper Co.</u>, 372 F.3d 326, 328 n.1 (5th Cir. 2004).   The Rules, however, do provide that a court may revise an interlocutory ruling "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  A motion for reconsideration of an interlocutory order, so long as not unreasonably delayed, is governed by the same standard as a motion to alter or amend a judgement under Rule 59(e).  <u>Thakkar v. Balasuriya</u>, No. H-09-0841, 2009 WL 2996727, at *1 (S.D. Tex. Sept. 9, 2009); <u>T-M Vacuum Products, Inc. v. TAISC, Inc.</u>, No. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008).  <u>See also</u> <u>Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.</u>, 189 F.R.D. 202, 205 (D.P.R. 1999). Rule 59(e) motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised

-2-

before the entry of judgment." <u>Templet v. HydroChem, Inc.</u>, 367 F.3d 473, 479 (5th Cir. 2004) (citing <u>Simon v. United States</u>, 891 F.2d 1154, 1159 (5th Cir. 1990)).  Instead, a motion under Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." <u>Id.</u>  Relief is also appropriate when there has been an intervening change in the controlling law.  <u>Schiller v. Physicians Resource Group Inc.</u>, 342 F.3d 563, 567 (5th Cir. 2003) (citing <u>In re Benjamin Moore & Co.</u>, 318 F.3d 626, 629 (5th Cir. 2002)).[2]

ABC does not contend that any of the evidence that it has included with the pending motion is "newly discovered" or that there has been any intervening change in controlling law.  ABC could have raised any and all of the arguments it raises now either in its opening claim construction brief or in response to WebEx's opening claim construction brief.  Therefore, the court will only grant ABC's motion if it is persuaded that doing so is necessary to correct a manifest error of law or fact.  <u>See</u> <u>Templet</u>, 367 F.3d at 479.

## II.  <u>Legal Standard for Claim Construction</u>

The construction of patent claims is a matter of law exclusively for the court.  <u>Markman v. Westview Instruments, Inc.</u>,

---

[2]In patent cases "purely procedural question[s] not pertaining to patent law" are decided under the law of the regional circuit.  <u>Marquip, Inc. v. Fosber America, Inc.</u>, 198 F.3d 1363, 1369 (Fed. Cir. 1999).

116 S. Ct. 1384, 1387 (1996).   Accordingly, when the parties dispute the meaning of particular claim terms, the court should consider the parties' proposed definitions, but must independently assess the available evidence and declare the meaning of the disputed terms.   Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1556 (Fed. Cir. 1995).

There are two types of evidence upon which courts may rely in making claim construction rulings:   (1) intrinsic evidence (e.g., the language of the claim itself, the patent specification, and the prosecution history of the patent) and (2) extrinsic evidence (e.g., dictionaries, treatises, and expert and inventor testimony). Vitronics Corp. v. Conceptronics, Inc., 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).   The court is not required to consider the available evidence in any particular order so long as the court "attach[es] the appropriate weight" to particular evidentiary sources in accordance with patent law principles.   Phillips v. AWH Corp., 415 F.3d 1303, 1324 (Fed. Cir. 2005).

## A.    Intrinsic Evidence

Intrinsic evidence is the "most significant source of the legally operative meaning of disputed claim language," and in most cases the court can resolve any ambiguity in a disputed claim term by looking solely to the intrinsic evidence.   Vitronics Corp., 90 F.3d at 1582-83.   The language of the claim itself is "'of primary importance[] in the effort to ascertain precisely what it is that

-4-

is patented.'" <u>Phillips</u>, 415 F.3d at 1312 (quoting <u>Merrill v.</u>
<u>Yeomans</u>, 94 U.S. 568, 570 (1876)).  This is because it is the
claims that "'define the scope of the right to exclude.'"
<u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1324 (Fed.
Cir. 2002) (quoting <u>Renishaw PLC v. Marposs Societa' per Azioni</u>,
158 F.3d 1243, 1248 (Fed. Cir. 1998)).

Although claim terms "'are generally given their ordinary and
customary meaning,'" <u>Phillips</u>, 415 F.3d at 1312 (quoting <u>Vitronics</u>
<u>Corp.</u>, 90 F.3d at 1582), there are few non-intuitive rules of
interpretation that the Federal Circuit regularly applies.
Particularly relevant to the pending motion is the general rule
that the indefinite articles "a" or "an" carry the non-singular
meaning "one or more" when used in open-ended claims containing the
transitional phrase "comprising." <u>Baldwin Graphic Sys., Inc. v.</u>
<u>Siebert, Inc.</u>, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (citing <u>KCJ</u>
<u>Corp. v. Kinetic Concepts, Inc.</u>, 223 F.3d 1351, 1356 (Fed. Cir.
2000)).  <u>See also</u> <u>Free Motion Fitness, Inc. v. Cybex Int'l, Inc.</u>,
423 F.3d 1343, 1350 (Fed. Cir. 2005).  "The subsequent use of
definite articles 'the' or 'said' in a claim to refer back to the
same claim term does not change the general plural rule, but simply
reinvokes that non-singular meaning." <u>Baldwin Graphic Sys.</u>, 512
F.3d at 1342.  A singular interpretation is appropriate only if
"the claim is specific as to the number of elements" or "the
patentee evinces a clear intent to so limit the article." <u>KCJ</u>
<u>Corp.</u>, 223 F.3d at 1356.  In other words, an exception to the

-5-

general rule "arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." Baldwin Graphic Sys., 512 F.3d at 1342-43 (citing Abtox Inc. v. Exitron Corp., 122 F.3d 1019 (Fed. Cir. 1997); Insituform Techs, Inc. v. Cat Contracting, Inc., 99 F.3d 1098 (Fed. Cir. 1996)).

While the claim language itself should be the court's primary focus, other intrinsic sources can be helpful. For example, the written description, or specification, can provide clarity. SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1344 (Fed. Cir. 2001). The claims "must be read in view of the specification of which they are a part." Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995). The specification is "highly relevant to the claim construction analysis" and can be the "single best guide to the meaning of a disputed term." Vitronics Corp., 90 F.3d at 1582. The specification "may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." Phillips, 415 F.3d 1316; see also CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (explaining that a patentee may "act[] as his own lexicographer"). Moreover, the specification may "make[] clear that the invention does not include a particular feature . . . ." SciMed Life Sys., Inc., 242 F.3d at 1341. In that case, the particular feature "is deemed to be outside the reach of the claims of the patent, even though the

language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." Id.

Importantly, however, the specification is generally to be used only to interpret the meaning of a claim, not to confine patent claims to the specific embodiments of the invention described in the specification. See Phillips, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); Dow Chem. Co. v. United States, 226 F.3d 1334, 1341-42 (Fed. Cir. 2000) ("[A]s a general rule claims of a patent are not limited to the preferred embodiment, or to the examples listed within the patent specification.") (citations omitted). Only if the patentee describes a particular embodiment as "important to the invention" may the court narrow the meaning of a claim to a single or preferred embodiment. Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1301 (Fed. Cir. 1999); see also CCS Fitness, Inc., 288 F.3d 1359 at 1366-67.

## B. Extrinsic Evidence

The court may also consider extrinsic evidence, but only "as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips, 415 F.3d at 1324. See also Vitronics Corp., 90 F.3d at 1583 (explaining that "it is improper to rely on extrinsic evidence" when "the

intrinsic evidence, alone, will resolve any ambiguity in a disputed
claim term"). The court may look to dictionaries, especially
technical dictionaries, and treatises if the court "deems it
helpful in determining 'the true meaning of language used in the
patent claims.'" Phillips, 415 F.3d at 1318 (quoting Markman, 52
F.3d at 980). The court, however, must always be mindful that
extrinsic evidence may only supplement or clarify -- not displace
or contradict -- the intrinsic evidence. See id. at 1319
("[E]xtrinsic evidence may be useful to the court, but it is
unlikely to result in a reliable interpretation of patent claim
scope unless considered in the context of the intrinsic
evidence.").

### III.  Analysis

A.    "Remote System Controller"

The term "remote system controller" appears in claim 16 of the
'253 patent and claim 1 of the '943 patent. ABC initially argued
that the term should be construed as "one or more computer elements
separate from, and facilitating communication between a local and
a remote computer, and validating logon commands to control access
between a plurality of local and remote computers."[3]  The court
concluded that the term means "a computer or controller that checks
the validity of logon commands and interfaces the local

---

[3]Plaintiff ABC's Opening Claim Construction Submission,
Docket Entry No. 154, at 19 (emphasis added).

portion/computer unit with the remote computer unit to permit the local portion/computer unit to operate the remote computer unit, but excluding passive devices that merely forward data packets without regard for their content."[4]

The court adopted the phrase "a computer or controller" over the phrase "one or more computer elements" preferred by ABC because ABC offered no argument or evidence in support of this aspect of its proposed definition and because the common specification of the '943 and '253 patents explicitly states that "'[t]he remote system controller can be any type of <u>computer or controller</u> . . . .'"[5] ABC now asks the court to clarify or reconsider its ruling and declare that a remote system controller "is not limited to a single device or any particular hardware or software configuration so long as the hardware or software work together to perform the functions identified for the remote system controller."[6]

1.   <u>Not Limited to a Single Device</u>

ABC first asserts that the term "remote system controller" cannot be limited to a single device because the term appears in "comprising" claims and is preceded by the article "a."   <u>See</u> <u>Baldwin Graphic Sys.</u>, 512 F.3d 1342 (explaining that "'an

---

[4]Memorandum Opinion on Claim Construction, Docket Entry No. 190, at 83-84 (emphasis added).

[5]<u>Id.</u> at 73 (quoting '253 patent, col.5 ll.9-14; '943 patent, col.5 ll.13-18 (emphasis added)).

[6]ABC's Motion, Docket Entry No. 191, at 5.

indefinite article "a" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising."'" (quoting <u>KCJ Corp.</u>, 223 F.3d at 1356)). This argument is inapt. Assuming <u>arguendo</u> that the cited rule of claim construction applies, the claims at issue would be construed to cover accused devices that include "one or more" remote system controllers. The rule, however, does not offer any guidance as to the composition of each particular remote system controller. The rule does not suggest that a particular remote system controller may consist of multiple devices as ABC contends.

ABC next argues that neither the claim language nor the specification limits the term "remote system controller" to a single device or any particular hardware or software configuration. In support of this argument, ABC points out that the common specification of the '253 and '943 patents states that "[t]he remote system controller can be <u>any type of</u> computer or controller . . . ."[7] ABC then cites extrinsic evidence that it contends shows that a computer and/or a controller may consist of more than one device.

ABC cites several dictionary definitions of the word "computer" and contends that they define the word based only on functionality and do not limit it to any particular physical embodiment. See <u>Microsoft Press Computer Dictionary</u> 75 (1991)

---

[7]'253 patent, col.5 ll.9-14; '943 patent, col.5 ll.13-18 (emphasis added).

("Any machine that does three things:  accepts structured input, processes it according to prescribed rules, and produces the results as output.  Computers exist in a remarkable range of sizes, shapes, abilities, and applications.") (included in ABC's Motion, Docket Entry No. 191, at Exhibit 1); <u>Webster's New World Dictionary of Computer Terms</u> 108 (5th ed. 1994) ("A device capable of solving problems or manipulating data by accepting data, performing prescribed operations (mathematical or logical) on the data, and supplying the results of these operations.") (included in ABC's Motion, Docket Entry No. 191, at Exhibit 2); <u>Random House Webster's College Dictionary</u> 271 (1998) ("a programmable electronic device designed for performing prescribed operations on data at high speed, esp. one housed with or linked to other devices for inputting, storing, retrieving and displaying the data.") (included in ABC's Motion, Docket Entry No. 191, at Exhibit 3).  As WebEx points out, however, each of these definitions defines the word "computer" in terms of a single device or machine, not in terms of multiple or plural devices or machines.

With regard to the word "controller," ABC cites a number of cases that hold that a "controller" may consist of more than one device or element.[8]  ABC relies primarily on <u>Automed Technologies,</u>

---

[8]Two of the cases cited by ABC do not hold that a "controller" may consist of more than one device or element.  In <u>Animatics Corp. v. Quicksilver Controls, Inc.</u>, 102 F. App'x 659, 666 (Fed. Cir. 2004), the Federal Circuit concluded that the trial court erred by requiring that the "PID controller" be a
(continued...)

Inc. v. Microfil, LLC, 244 F. App'x 354 (Fed. Cir. 2007).   In Automed Technologies the Federal Circuit affirmed the District Court's definition of "controller" as a "single control system that regulates the entire process," but contrary to the District Court, the Federal Circuit clarified that the "controller need not be limited to a single device . . . ."  Automed Techs., 244 F. App'x at 357-58.  Unlike the patents at issue in this case, however, the patent at issue in Automed Technologies did not disclose any "single device . . . which performs or is capable of performing all of the functions recited" in the claim language.  Id. at 357.  In fact, the specification described "at least two structures that perform control functions."  Id.  In the '253 and '943 patents, the specification always refers to the remote system controller as a singular device or element that alone performs all of the functions required of it by the claim text.[9]

---

[8](...continued)
physically separate circuit than the "microprocessor," but did not discuss whether the "PID controller" could consist of multiple devices or elements.  In Goss International Americas, Inc. v. K & M Newspaper Services, Inc., 469 F. Supp. 2d 547, 557-59 (N.D. Ill. 2006), the court concluded that the "control means" element of the asserted claim was not to be interpreted pursuant to 35 U.S.C. § 112, ¶ 6 because the claim recited the structure necessary to perform the stated function -- a "main controller" and a "plurality of sheet material feed controllers" -- but the court did not discuss whether the two types of controllers could consist of multiple devices or elements.  The Goss court stated, however, that a person of ordinary skill in the art would understand the term "sheet material feed controller" to mean "a device used to control the operation of a sheet feeder."  Id. at 558 (emphasis added).  Therefore, the court does not find these cases relevant to this claim construction dispute.

[9]See '253 patent; '943 patent.

Nor does the court find the other relevant cases cited by ABC to be persuasive.  In <u>Dane Industries, Inc. v. Ameritek Industries LLC</u>, No. 03-3488, 2004 WL 5683721, at *3 (D. Minn. May 4, 2004), the court defined "controller" as "at least one mechanism or device."  But unlike this case, the primary dispute between the parties was apparently not whether the "controller" at issue could consist of multiple components.  Instead, the court discussed only whether the components of the controller should be referred to as an "electrical circuit or group of electrical circuits" or as a "mechanism or device."  <u>Dane Indus.</u>, 2004 WL 5683721, at *3.

In <u>DisplayLink Corp. v. Magic Control Technology Corp.</u>, 615 F. Supp. 2d 1051, 1062-63 (N.D. Cal. 2009), the court defined the term "VGA controller" as "<u>a component or components</u> that control the routing of VGA signals pursuant to the VGA standard" (emphasis added).  The court, however, did not explain why it interpreted the term to cover multiple components.  Conversely, the court, also without explanation, defined the term "USB controller" in a singular manner as "<u>a device</u> that receives a USB display signal, holds it until it receives a bus command, and then forwards the USB display signal out on a FIFO basis."  <u>DisplayLink Corp.</u>, 615 F. Supp. 2d at 1062 (emphasis added).

ABC also cites the deposition testimony of Srinath Anantharaman, a former employee of WebEx who is the named inventor on a patent application filed by WebEx that involves technology similar to that claimed in the patents at issue in this action.

-13-

Anantharaman agreed that the "central computer system," as described in WebEx's patent application, was a "type of controller."[10] He then testified that the "central computer system" could include different types of servers, and then explained that different servers "could be one computer having seven different server demons or, you know, thousands of computers running lots of server demons."[11]

Assuming that Anantharaman is one of ordinary skill in the art, the court agrees that this extrinsic evidence suggests that a person of ordinary skill in the art could understand that a controller may consist of multiple devices, i.e., multiple computers. But as WebEx points out, the same dictionaries cited by ABC for their definitions of the term "computer" unanimously define the term "controller" in terms of a single device, unit, or mechanism. See Microsoft Press Computer Dictionary 83 (1991) ("A device upon which other devices rely for access to a computer subsystem.") (included in WebEx's Response, Docket Entry No. 196, at Exhibit 1); Webster's New World Dictionary of Computer Terms 127-28 (5th ed. 1994) ("The electronic board or unit that regulates the operation of a peripheral device.") (included in WebEx's Response, Docket Entry No. 196, at Exhibit 2); Random House

[10]Videotaped Deposition of Srinath Anantharaman, at 112 (May 21, 2009) (included in ABC's Motion, Docket Entry No. 191, at Exhibit 4).

[11]Id. at 117.

Webster's College Dictionary 288 (1998) ("a regulating mechanism") (included in WebEx's Response, Docket Entry No. 196, at Exhibit 3). Therefore, at best for ABC, the extrinsic evidence with respect to the word "controller" is mixed.  More importantly, ABC has failed to point to any specific intrinsic evidence that supports its position.  The court is not persuaded that it should clarify its definition by declaring that a "remote system controller" is not limited to a single device.

2.   Not Limited to Any Particular Hardware or Software Configuration

The concepts of hardware and software were not mentioned in either party's opening claim construction brief or response brief with regard to the term "remote system controller."  Accordingly, the court did not consider whether it should define "remote system controller" in such terms.  ABC now asserts that a remote system controller "is not limited to . . . any particular hardware or software configuration so long as the hardware or software work together to perform the functions identified for the remote system controller."[12]

In support of this aspect of its proposed clarified definition, ABC cites two cases.  In Automed Technologies the Federal Circuit held that the term "controller," in addition to not being limited to a single device, was also not limited to "any particular hardware or software."  Automed Techs., 244 F. App'x at

_____

[12]ABC's Motion, Docket Entry No. 191, at 5.

-15-

358.   Although the Court of Appeals explained in great detail why it concluded that the "controller" was not limited to a single device, it did not explain why it also noted that the controller was not limited "to any particular hardware or software." <u>See</u> <u>id.</u> at 357-58.   Therefore, the court does not find this case particularly helpful or persuasive.

The second case cited by ABC can be clearly distinguished from the case at bar.   In <u>Witness Systems, Inc. v. Nice Systems, Inc.</u>, No. 1:06-cv-126-TCB, 2008 WL 2047633 (N.D. Ga. May 10, 2008), the Special Master had previously defined the term "communication traffic controller" to mean "a device that manages information flow within the monitoring system."[13]   <u>Witness Sys.</u>, 2008 WL 2047633, at *4.   The parties disputed whether the term "device" as it appeared in the Special Master's definition of "communication traffic controller" encompassed only hardware or both hardware and software, and asked the Special Master to resolve the dispute.   <u>Id.</u> at *5.   The Special Master pointed to specific citations from the abstract and figures of the asserted patents that suggested that the device at issue could include both hardware and software.   <u>Id.</u> Accordingly, the Special Master concluded that the term "device" "encompasses elements of hardware and software," <u>id.</u>, and the court adopted the Special Master's recommendation.   <u>Id.</u> at *1-2.   In this

_____

[13]The court notes that the definition of "communication traffic controller" as "a device . . ." by the Special Master in <u>Witness System</u> suggests, contrary to ABC's position, that the term "controller" does not necessarily connote multiple devices.

-16-

case, ABC has not pointed to anything in the specification or claim language of the '943 and '253 patents that suggests that the remote system controller may consist of any combination of hardware or software.

The court will not adopt a definition stating that the remote system controller is not limited to any particular hardware or software configuration based solely on the definitions adopted by other courts in unrelated cases dealing with different patent terms merely because they happened to include a single common word, i.e., "controller."  ABC has failed to persuade the court that it should clarify, alter, or augment its definition of the term "remote system controller" in the manner suggested.

**B.    "Logon Command" and "Associates the Valid Logon Command with the Remote Computer Unit"**

The term "logon command" appears in claim 16 of the '253 patent, claims 1 and 2 of the '943 patent, and claims 3, 4, and 5 of the '945 patent.  ABC asserted in its opening claim construction brief that the term should be interpreted as "identifying information, such as a name or data, associated with, and enabling access to, <u>one or more remote computers</u> where the validation is performed by a website, remote system controller, or network control computer."[14]  The court concluded that "logon command," as used in the asserted patents, means

_____

[14]ABC's Opening Claim Construction Submission, Docket Entry No. 154, at 14 (emphasis added).

identifying information, such as a name or data, associated with and enabling operation of <u>a remote computer unit</u>, and which is checked for validity by the [remote system controller (claim 16 of the '253 patent, claim 1 of the '943 patent)] / [network control computer (claim 2 of the '943 patent)] / [website (claim 1 of '945 patent)].[15]

In reaching this conclusion the court rejected ABC's argument that the logon command enabled operation of "one or more remote computers" because "the claim language itself for each of the asserted claims speaks in terms of only a single remote computer unit."[16]   Accordingly, the "court's definition of logon command . . . reflect[s] association with a single remote computer unit."[17]

The term "associates the valid logon command with the remote computer unit" appears in claims 3, 4, and 5 of the '945 patent. In its opening <u>Markman</u> brief ABC offered the following definition: "to connect or bring into relation a valid logon command with <u>one or more computers</u> that are to be remotely controlled from a remote location using a local computer / interface unit."[18]   The court adopted a different definition:  "to connect or bring into relation a valid logon command with <u>a particular computer unit</u> that is to be remotely controlled from a remote location using an interface

---

[15]Memorandum Opinion on Claim Construction, Docket Entry No. 190, at 54 (emphasis added).

[16]<u>Id.</u> at 46.

[17]<u>Id.</u>

[18]Plaintiff ABC's Opening Claim Construction Submission, Docket Entry No. 154, at 15 (emphasis added).

-18-

unit."[19]  As it did with regard to the definition of the term "logon command," the court rejected ABC's position that the definition should refer to "one or more computers" because "the asserted claims unanimously and unambiguously speak in terms of a single remote computer unit . . . ."[20]

ABC now asks the court to reconsider its rulings to the extent they limit a logon command to being associated with only one particular remote computer unit or suggest that a separate logon command must be entered in order to operate each remote computer unit.[21]  In other words, ABC asks the court to modify its definition of "logon command" by replacing the phrase "a remote computer unit" with the phrase "one or more remote computer units," and to modify its definition of "associates the valid logon command with the remote computer unit" by replacing the phrase "a particular computer unit" with the phrase "one or more computer units."[22]  ABC asserts that its interpretation is correct because, as a matter of law, the articles "a" or "the" that proceed the term "remote computer unit" in the asserted claims must be understood to mean "one or more."  See Baldwin Graphic Sys., 512 F.3d at 1342 (explaining that "an indefinite article 'a' or 'an' in patent

---

[19]Memorandum Opinion on Claim Construction, Docket Entry No. 190, at 59 (emphasis added).

[20]Id.

[21]ABC's Motion, Docket Entry No. 191, at 5-14.

[22]See id.

parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising,'" and that "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule").[23, 24]   The court evaluates ABC's argument with respect to each of the asserted patent claims.

### 1.   '253 Patent

Claim 16 of the '253 patent, as amended, reads:

A remote portion of a split personal computer system for selectively processing video portions, input/output portions, computational portions and storage portions of personal computer tasks wherein the split personal computer has a plurality of **remote computer units** selectively performing the computational portions and the storage portions of the personal computer tasks, each of the **remote computer units** being associated with a unique individual and having application programs and data associated with previous usage by the individual stored thereon, and a plurality of local portions located remotely from the **remote computer units** and adapted to selectively perform the video portions and the input/output portions of the personal computer tasks, each of the local portions being associated with an individual such that each individual is associated with one of the local portions and one of the **remote computer units**, the remote portion comprising:

---

[23]ABC did not raise this argument or invoke this claim construction rule in its opening claim construction brief or in response to WebEx's initial claim construction brief.  See ABC's Opening Claim Construction Submission, Docket Entry No. 154, at 14-17; ABC's Response to WebEx's Claim Construction Submission, Docket Entry No. 165, at 7-11.

[24]WebEx does not dispute, and the court agrees, that each of the asserted claims is an "open-ended claim[] containing the transitional phrase 'comprising.'"  Baldwin Graphic Sys., 512 F.3d at 1342.

a remote system controller established on the World Wide
Web and communicating with the local portions via the
Internet, adapted to receive remote **logon commands**, check
the remote **logon commands** for validity, and interface
each individual's local portion with the individual's
**remote computer unit** of the split personal computer
system thereby permitting valid data signals received
from each individual's local portion to be transmitted to
each individual's **remote computer unit** of the split
personal computer system, the data signals being
processable by the individual's **remote computer unit** of
the split personal computer system to generate output
signals, the output signals including video signals and
being transmittable from the individual's **remote computer
unit** of the split personal computer system to the
individual's local portion.[25]

The singular term "remote computer unit" is never immediately
preceded by the articles "a," "an," or "the."  Instead, the term is
always proceeded by the term "the individual's" or "each
individual's."  Therefore, it is questionable whether the general
rule cited by ABC is even potentially applicable in this situation.
Even if the general rule is potentially applicable, however, the
court concludes that an exception applies.

When the claim language itself clearly limits the article "a"
or "an" to "one" or some other specific number of elements, the
general rule cited by ABC does not apply.  <u>Baldwin Graphic Sys.</u>,
512 F.3d at 1342; <u>KCJ Corp.</u>, 223 F.3d at 1356.  See also <u>Abtox,
Inc.</u>, 122 F.3d at 1024 (holding that, despite the general rule, the
claim language "clarifies that only one chamber is in question").
Claim 16 of the '253 patent clearly limits the number of remote
computer units that may be associated with a particular logon
command.

---

[25] '253 patent, claim 16 (as amended).

The claim states that "each of the remote computer units [in the personal computer system] [is] associated with a unique individual."[26] Moreover, "each individual is associated with . . . one of the remote computer units."[27] The claim then explains that after the remote system controller receives logon commands and checks them for validity, it "interfaces each individual's local portion with the individual's remote computer unit . . . ."[28] The remote system controller cannot interface the individual's local portion with more than one remote computer unit upon receipt of a particular valid logon command because the claim specifically states that each individual is associated with only "one of the remote computer units."[29] Accordingly, claim 16 of the '253 patent makes abundantly clear that a logon command is associated with and enables the operation of only one remote computer unit. The court will not modify its construction of the term "logon command" for claim 16 of the '253 patent.

2.   '945 Patent

Claims 3, 4, and 5 of the '945 patent were originally dependent claims. Claims 4 and 5 depended on the now-withdrawn

---

[26]'253 patent, claim 16 (as amended) (emphasis added).

[27]Id. (emphasis added).

[28]Id. (emphasis added).

[29]Id.

claim 1, and claim 3 depended on the now-withdrawn claim 2, which itself also depended on claim 1.  The full text of claims 3, 4, and 5 are provided below, written in independent form.

Claim 3 of the '945 patent provides:

A method for providing a service for remotely controlling a **remote computer unit** using an interface unit, the **remote computer unit** comprising a personal computer, the method comprising the steps of:

operating a website capable of allowing and facilitating communication between a **remote computer unit** and an interface unit via an internet;

receiving, by the website, a valid **logon command** from the interface unit whereby the website associates the valid **logon command** with the **remote computer unit**;

receiving, by the website, data signal instructions from the interface unit;

sending the data signal instructions from the website to the **remote computer unit** whereby the data signal instructions act to remotely operate the **remote computer unit** as if the operator of the interface unit were sitting in front of the **remote computer unit** and actually operating the **remote computer unit**;

installing a program onto the **remote computer unit** to permit the data signal instructions sent by the website originating from the interface unit to further facilitate the ability of the interface unit to remotely operate the **remote computer unit** through the website as if the operator of the interface unit were sitting in front of the **remote computer unit** and actually operating the **remote computer unit**; and

billing for access to the service and monitoring payments made by the customer to maintain the customer's access to the service.[30]

---

[30] '945 patent, claim 3 (independent form).

-23-

Claim 4 of the '945 patent provides:

A method for providing a service for remotely controlling a **remote computer unit** using an interface unit, the **remote computer unit** comprising a personal computer, the method comprising the steps of:

operating a website capable of allowing and facilitating communication between a **remote computer unit** and an interface unit via an internet;

receiving, by the website, a valid **logon command** from the interface unit whereby the website associates the valid **logon command** with the **remote computer unit**;

receiving, by the website, data signal instructions from the interface unit;

sending the data signal instructions from the website to the **remote computer unit** whereby the data signal instructions act to remotely operate the **remote computer unit** as if the operator of the interface unit were sitting in front of the **remote computer unit** and actually operating the **remote computer unit**; and

billing for access to the service and monitoring payments made by the customer to maintain the customer's access to the service.[31]

Claim 5 of the '945 patent provides:

A method for providing a service for remotely controlling a **remote computer unit** using an interface unit, the **remote computer unit** comprising a personal computer, the method comprising the steps of:

operating a website capable of allowing and facilitating communication between a **remote computer unit** and an interface unit via an internet;

receiving, by the website, a valid **logon command** from the interface unit whereby the website associates the valid **logon command** with the **remote computer unit**;

receiving, by the website, data signal instructions from the interface unit;

---

[31]'945 patent, claim 4 (independent form).

sending the data signal instructions from the website to the **remote computer unit** whereby the data signal instructions act to remotely operate the **remote computer unit** as if the operator of the interface unit were sitting in front of the **remote computer unit** and actually operating the **remote computer unit**; and

downloading a program from the website to the **remote computer unit** prior to the step of sending the data signal instructions from the website to the **remote computer unit**, the program downloaded onto the **remote computer unit** establishing the **remote computer unit** to be controlled by the data signal instructions.[32]

Claims 3, 4, and 5 of the '945 patent are "open-ended claims containing the transitional phrase 'comprising,'" Baldwin Graphic Sys., 512 F.3d at 1342, and the term "remote computer unit" is immediately preceded by the article "a" in the first instance, and then the article "the" in subsequent instances.   Therefore, unless an exception applies, the court must construe the articles "a" and "the" preceding the term "remote computer unit" to mean "one or more."   Id.

WebEx first contends that the claim language of the '945 patent specifically limits the number of remote computer units associated with a particular logon command to one.   WebEx points out that all three claims provide that the "website associates the valid logon command with the remote computer unit," and that a valid logon command enables the user to "operate the remote computer unit as if [he] were sitting in front of the remote computer unit and actually operating the remote computer unit."[33]

---

[32]'945 patent, claim 5 (independent form).

[33]'945 patent, claims 3, 4, and 5.

WebEx asserts that this claim language, in combination with the fact that ABC has admitted that "a user would connect only to a particular remote computer unit at a time, . . . and not multiple computers simultaneously,"[34] mandates a one-to-one correspondence of logon commands to remote computer units.  WebEx reasons that a single valid logon command must be associated with the single remote computer unit that the user will operate at a given time.

The court disagrees.  The quoted excerpt from the asserted claims does not use a word such as "one" or "particular" before the phrase "remote computer unit" that would necessitate a one-to-one correspondence or a singular interpretation.  The quoted excerpt of the claim uses only the articles "a" and "the" -- the very articles to which the general rule applies -- before the pertinent nouns. Therefore, the claim language itself does not require that a single logon command be associated with only one particular remote computer unit.  Nor does the fact that a user can operate only one of his remote computer units at any given time mean that a logon command could not be associated with and enable operation of more than one remote computer unit.  Nothing in the claim language of the '945 patent excludes from the scope of the invention an embodiment in which a user first enters a single logon command, which will identify his remote computer unit(s), and then selects the particular one of his remote computer units(s) he seeks to

---

[34]ABC's Motion, Docket Entry No. 191, at 5.

control.   Based solely on the claim language, a single logon
command could identify or be associated with a group or subset of
multiple remote computer units belonging to a particular user, any
one of which the user could then choose to operate.  Cf. Invitrogen
Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1368 (Fed. Cir. 2003)
("The transition 'comprising' in a method claim indicates that the
claim is open-ended and allows for additional steps.").

        WebEx also asserts that the specification of the '945 patent
evinces a clear intent on the part of the patentee to limit the
articles "a" or "an" preceding the term "remote computer unit" to
a singular meaning.  WebEx admits that the specification describes
a preferred embodiment that enables a user to remotely control two
different types of remote computer units:  (1) a multiple computer
system ("MCS") unit or (2) any other computer such as a home or
office computer.[35]  WebEx points out, however, that the specifica-
tion uses two different terms to describe the logon command
required to access and operate each of the two different types of
remote computer units.  The specification explains that a user
seeking to connect to and control a non-MCS computer unit, i.e., a
home or office computer, would enter an "authorization code."[36]  On
the other hand, a user seeking to connect to and control an MCS

_____

        [35]See '945 patent col.4 ll.37-44 (explaining that a user can
use the invention to connect with and remotely control either a
MCS unit or another computer, such as the user's home computer).

        [36]Id. col.5 l.26.

-27-

unit must enter a "personal identification number (PIN)."[37]  WebEx
also points out that in the preferred embodiment of the invention
described in the specification, a user first selects whether he
would like to connect to his MCS unit or his "other computer" and
then, _after_ he selects MCS unit, enters his PIN.[38]  WebEx contends
that "these passages confirm that the user needs a separate logon
for each remote computer unit it wants to operate . . . ."[39]

     The court agrees with WebEx, based on the specification
excerpts cited above, that there is a one-to-one correspondence
between logon commands and remote computer units in the preferred
embodiment of the invention described in the '945 patent.  This,
however, does not demonstrate that the patentee clearly intended to
so limit the scope of the invention.  "[S]tanding alone, a
disclosure of a preferred or exemplary embodiment encompassing a
singular element does not disclaim a plural embodiment."  KCJ
Corp., 223 F.3d at 1356.  See also Electro Med. Sys., S.A. v.
Cooper Life Sciences, Inc., 34 F.3d 1048, 1054 (Fed. Cir. 1994)
("[A]lthough the specifications may well indicate that certain
embodiments are preferred, particular embodiments appearing in a

_____

[37]_Id._ col.4 l.40, col.4 l.48, col.6 l.27.

[38]_Id._ col.6 ll.5-11, col.6 ll.25-29 (explaining that the
customer would have three options, "a) new customer, b) service
computer and c) other computers," and that "[i]f the service
computer (b) option is selected the menu which appears, asks for
the customer's [PIN]," and that "[u]pon providing the PIN a
connection by the CSCU 20 unit is made to the MCS 30 via line
35").

[39]WebEx's Response, Docket Entry No. 196, at 11.

specification will not be read into the claims when the claim language is broader than such embodiments.").

WebEx also points out that the specification explains that each time the user uses the invention to connect to his remote computer unit, the screen he will see on his local interface unit will "appear just as it was, the last time the individual signed off on that particular type of machine.  In addition all of the individual[']s database[s] and files are decoded and made available just as if they were stored on a PC located at the individual's current log in location."[40]  WebEx contends that "[t]he logon command must be associated with a particular remote computer unit to be able to obtain the specific collection of information 'dedicated' to this particular individual's use of this particular remote computer unit."[41]

The court is again not persuaded.  The claim language is broad enough to encompass an embodiment where a single logon command is associated with and enables a user to connect to and operate multiple remote computer units, albeit only one at a time.  There is no reason that a different logon command is required for each separate remote computer unit in order for each particular remote computer unit to appear just as it was the last time the user disconnected with that particular unit.

---

[40]'945 patent, col.1 ll.63-67.

[41]WebEx's Response, Docket Entry No. 196, at 12.

-29-

The court concludes that no exception to the general rule applies.  Because the general rule cited by ABC applies, the court must, as a matter of law, interpret the articles "a" and "the" to mean "one or more."  See Baldwin Graphic Sys., 512 F.3d at 1342-43; KCJ Corp., 223 F.3d at 1356.  Therefore, contrary to the court's prior claim construction rulings with regard to the terms "logon command" and "associates the valid logon command with the remote computer unit," with respect to the '945 patent, the court concludes that a logon command is not limited to being associated with or enabling the operation of only one particular remote computer unit.

3.    '943 Patent

Claim 1 of the '943 patent, as amended, reads:

A method for providing a service for connecting a local computer unit to a **remote computer unit** to permit the local computer unit to operate the **remote computer unit**, the **remote computer unit** comprising a personal computer, the method comprising the steps of:

establishing a remote system controller on an internet such that the remote system controller is remote from the local computer unit and the **remote computer unit**;

receiving and checking the validity, by the remote system controller, a valid **logon command**; and interfacing, through the remote system controller, the local computer unit with the **remote computer unit** to permit the local computer unit to operate the **remote computer unit** wherein an input unit of the local computer unit functions as an input unit of the **remote computer unit** and a display device of the local computer unit displays output signals from the **remote computer unit**; and

generating a bill for the service.[42]

---

[42]'943 patent, claim 1 (as amended).

Claim 2 of the '943 patent, as amended, reads:

A method for providing a service for connecting a local computer unit to a **remote computer unit** to permit the local computer unit to operate the **remote computer unit**, the **remote computer unit** comprising a personal computer, the method comprising the steps of:

operating a network control computer that is remote from the local computer unit and the **remote computer unit** to connect the **remote computer unit** to the local computer unit permitting the local computer unit to operate the **remote computer unit** upon receipt and checking the validity of a valid **logon command** identifying the **remote computer unit**; and

generating a bill for the service.[43]

Claims 1 and 2 of the '943 patent are "open-ended claims containing the transitional phrase 'comprising,'" <u>Baldwin Graphic Sys.</u>, 512 F.3d at 1342, and the term "remote computer unit" is immediately preceded by the article "a" in the first instance, and then the article "the" in subsequent instances.  Therefore, unless an exception applies, the court must construe the articles "a" and "the" preceding the term "remote computer unit" to mean "one or more."  <u>Id.</u>

WebEx first contends that the claim language of the '943 patent specifically limits the number of remote computer units associated with a particular logon command to one.  WebEx points to a particular phrase in claim 2:  "to connect the remote computer unit to the local computer unit permitting the local computer unit to operate the remote computer unit upon receipt and checking the

---

[43]'943 patent, claim 2 (as amended).

validity of a valid logon command identifying the remote computer unit."[44]  WebEx argues that this phrase, in combination with the fact that ABC has admitted that "a user would connect only to a particular remote computer unit at a time, . . . and not multiple computers simultaneously,"[45] mandates a one-to-one correspondence of logon commands to remote computer units.  WebEx contends that the logon command must identify the single remote computer unit that is to be operated by the user at a given time.

This is virtually the same argument that WebEx made with regard to the claim language of the '945 patent.  For the same reasons explained above, the court is not persuaded.  The claim language of the '943 patent does not require that a single logon command be associated with only one particular remote computer unit.  The claim language does not foreclose the possibility that a single logon command could identify "one or more" remote computer units, any one of which the user could then choose to connect to and control.  Cf. Invitrogen Corp., 327 F.3d at 1368 ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps.").

WebEx also asserts that the specification of the '943 patent evinces a clear intent on the part of the patentee to limit the articles "a" or "an" preceding the term "remote computer unit" to

---

[44]'943 patent, claim 2 (as amended).

[45]ABC's Motion, Docket Entry No. 191, at 5.

a singular meaning.  WebEx cites only a single sentence from the specification of the '943 patent.  The sentence cited by WebEx states:

> Application programs are typically stored on the remote computer units 24 and the data associated with the previous usage by the individual are stored on the remote computer units 24 so that such application programs and data are accessible by the local portion 12a and 12b of the split personal computer system 10, as will be discussed below.[46]

This sentence does not even mention logon commands and does not suggest that a logon command may be associated with only one remote computer unit.  This sentence suggests that an individual user may have or be associated with multiple remote computer units.  The sentence is silent, however, as to the relevant question, i.e., whether the individual must have a distinct logon command for each of his remote computer units, or whether he can access all of his remote computer units using a single logon command.

Another sentence in the specification of the '943 patent, however, answers this question.  As ABC points out, the specification explains that

> [t]he remote system controller 26 receives the remote logon command, and in response thereto, the remote system controller 26 checks the remote logon command for validity and allows connection to <u>at least one of the remote computer units</u> 24 if the remote logon command is valid and prohibits connection of the remote portion 22 to the local portion 12 of the split personal computer system 10 if the particular remote logon command is not valid.[47]

---

[46]'943 patent, col.5 ll.2-8.

[47]<u>Id.</u>, col.7 ll.50-58.

This sentence shows that claims 1 and 2 of the '943 patent would encompass an embodiment in which a single logon command is associated with and enables operation of more than one remote computer unit.  See Vitronics Corp., 90 F.3d at 1582 (explaining that the specification is "highly relevant to the claim construction analysis" and can be the "single best guide to the meaning of a disputed term").  Contrary to the court's prior claim construction ruling with regard to the term "logon command," with respect to the '943 patent, the court concludes that a logon command is not limited to being associated with or enabling the operation of only one particular remote computer unit.

## IV.  **Conclusion and Order**

For the reasons explained above, the court is not persuaded that its construction of the term "remote system controller" is incorrect.  Nor is the court persuaded that its construction of the term "logon command," as that term is used in the '253 patent, is incorrect.  Accordingly, the court will not clarify, amend, or augment its claim construction rulings with regard to these claim terms.

For the '943 patent and the '945 patent, however, the court is persuaded that its definitions of the terms "logon command" and "associates the valid logon command with the remote computer unit" improperly limit a logon command to being associated with and

-34-

enabling operation of only one particular remote computer unit.[48]
For the '943 and '945 patents the court's definitions are
inconsistent with the well-established rule of patent claim
construction that "'an indefinite article "a" or "an" . . . carries
the meaning of "one or more" in open-ended claims containing the
transitional phrase "comprising."'" <u>Baldwin Graphic Sys.</u>, 223 F.3d
at 1356 (quoting <u>KCJ Corp.</u>, 223 F.3d at 1356).   Therefore, these
claim construction rulings constituted manifest errors of law, and
granting ABC's motion for reconsideration with respect to these
terms is warranted.   <u>See Templet</u>, 367 F.3d at 479.   Accordingly,
ABC's Motion for Clarification or, in the Alternative, Motion for
Reconsideration Regarding <u>Markman</u> Ruling (Docket Entry No. 191) is
**GRANTED in part and DENIED in part**.

The court amends its Memorandum Opinion and Order on Claim
Construction (Docket Entry No. 190) as follows:

> 1.  <u>For the '943 patent and the '945 patent only</u>, the
> term "logon command" means "identifying information, such
> as a name or data, associated with and enabling operation
> of <u>one or more</u> remote computer units, and which is
> checked for validity by the [remote system controller
> (claim 1 of the '943 patent)] / [network control computer
> (claim 2 of the '943 patent) / [website (claim 1 of the
> '945 patent)]."[49]

---

[48]<u>See</u> Memorandum Opinion on Claim Construction, Docket Entry
No. 190, at 46-47, 59.

[49]Although claim terms are typically interpreted
consistently across related patents, the court may draw
distinctions between the patents "where necessary."  <u>NTP, Inc. v.
Research In Motion, Ltd.</u>, 418 F.3d 1282, 1293 (Fed. Cir. 2005).

2.  The term "associates the valid logon command with the remote computer unit" means "to connect or bring into relation <u>one or more</u> valid logon commands with <u>one or more</u> remote computer units that are to be remotely controlled from a remote location using an interface unit."[50]

**SIGNED** at Houston, Texas, on this 30th day of October, 2009.

_____
                    SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[50]As WebEx's Response points out, the general rule must be applied not only to the articles immediately preceding the term "remote computer unit," but also to the same articles immediately preceding the term "valid logon command."  <u>See</u> WebEx's Response, Docket Entry No. 196, at 9 n.3.